IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD DAWSON, | ) |
| | ) CIVIL ACTION NO. |
| Plaintiff, | ) |
| | ) COMPLAINT |
| v. | ) |
| | ) JURY TRIAL DEMAND |
| | ) |
| CMA CGM (AMERICA) LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on sex and retaliation, and to provide appropriate relief to Richard Dawson ("Dawson") who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff Richard Dawson("Plaintiff") alleges that Defendant CMACGM (AMERICA) LLC ("Defendant Employer") subjected Dawson to sexual harassment and a sexually hostile work environment, because of his sex, male, and then constructively discharged Dawson.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to §706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e-5(f)(l) and (3) and 42 U.S.C. §2000e-2(a), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged unlawful were committed within the jurisdiction of the United States District Court for Middle District of Tennessee, Nashville Division.

## PARTIES

3. The Plaintiff is a male citizen and resident of Davidson County, Tennessee and a former employee of Defendant Employer.

4. At all relevant times, Defendant Employer has continuously been a foreign limited liability company doing business in the State of Tennessee and the City of Nashville and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant Employer has been a covered entity under 42 U.S.C. §2000e-5(f)(l) and (3).

## ADMINISTRATIVE PROCEDURES

7. Dawson filed a charge of discrimination ("charge") with the Equal Employment Opportunity Commission ("EEOC") against Defendant Employer alleging violations of Title VII by Defendant Employer. A copy of the charge is attached to this Complaint as Exhibit A.

8. On May 16, 2025, the EEOC issued Plaintiff a Notice of Right to Sue Letter to Plaintiff. A copy of the Right to Sue Letter is attached to this Complaint as Exhibit B.

9. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

10. The above-named employer hired Plaintiff in March 2018, as a Customer Service

Representative.

11. During the relevant period, Plaintiff was employed in the role of Project Manager.

12. On March 21, 2024, during BV2 Strategy trip in Norfolk, VA, Sr. Vice President, Client Solutions Shao Chua ("Chua") and Vice President of Client Experience, Amanda Meek ("Meek") compelled Plaintiff to cancel existing plans with coworkers to connect with Manager Christian Rodrigo ("Rodrigo") from home office in Marsielle, France.

13. On that same date and time, Rodrigo propositioned sex from Plaintiff in exchange for two months in Marsielle, France.

14. In April 2024, Rodrigo pushed hard to move Plaintiff's hotel to Castellane which was easier access for Rodrigo.

15. Rodrigo also attempted to get Plaintiff intoxicated on numerous occasions and solicited Plaintiff for sex.

16. Plaintiff objected all Rodrigo's sexual favors and then Plaintiff was retaliated against by Chua.

17. For example, Chua displayed anger, bullying and unprofessional conduct, both in person and during virtual workplace interactions toward Plaintiff.

18. There were other employees who also experienced or witnessed unprofessional behavior from Chua toward Plaintiff.

19. Due to the on-going hostile working environment, in September 2024 Plaintiff was constructively discharged from Defendant Employer.

20. Plaintiff feared retaliation if he filed made complaints of sexual harassment against manager Rodrigo.

## STATEMENT OF CLAIMS

### COUNT I:

### SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT (TITLE VII)

3

Case 3:25-cv-00901    Document 1    Filed 08/11/25    Page 3 of 16 PageID #: 3

21. Since at least March 2024 through at least September of 2024, Defendant Employer has engaged in unlawful employment practices at its Nashville, Tennessee location in violation of §703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

22. The unlawful employment practices include subjecting Dawson to unwelcome sexual harassment and a sexually hostile work environment because of his sex, male.

    a. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through Paragraph 21 herein as if fully repeated verbatim.

    b. The sexual harassment by manager Rodrigo of Dawson consisted of sexual comments and quid pro quo discrimination, because of his sex, male.

    c. Dawson did not welcome the sexual harassment from manager Rodrigo.

    d. The sexual harassment from manager Rodrigo was severe and/or pervasive.

    e. Defendant Employer does not maintain an effective sexual harassment policy.

    f. Defendant Employer failed to take appropriate remedial measures to protect Dawson from sexual harassment.

    g. Sexual harassment at the Defendant Employer's premises was common knowledge to the employees who worked there.

## COUNT II:
## CONSTRUCTIVE DISCHARGE (TITLE VII)

23. The unlawful employment practices include subjecting Dawson to a constructive discharge in violation of Title VII, 42 U.S.C. §2000e-2.

    a. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through Paragraph 22 herein as if fully repeated verbatim.

    b. Manager Rodrigo continued to subject Dawson to sexual harassment because of his sex, male, when Rodrigo attempted to get Plaintiff

    intoxicated on numerous occasions and solicited Plaintiff for sex.

  c.  When Dawson, reported to work, the sexual comments, from manager Rodrigo upon Dawson altered his working conditions.

  d.  Following Dawson's objection to all Rodrigo's sexual favors, manager Rodrigo continued to subject Dawson to sexual harassment.

  e.  When Dawson, reported to work, the continued sexual comments, from manager Rodrigo upon Dawson created an abusive working environment.

  f.  The working conditions, as a result of the sexual harassment because of his sex, male, from manager Rodrigo, became so intolerable and caused Dawson severe emotional distress, constructively discharging Dawson.

24. The effect of the practices complained of in Paragraphs 10 through 23 has been to deprive Dawson of equal employment opportunities and to otherwise adversely affect his employment because of his sex, male.

25. The unlawful employment practices complained of in Paragraphs 10 through 23 were intentional.

26. The unlawful employment practices complained of in Paragraphs 10 through 23 were done with malice or with reckless indifference to the federally protected rights of Dawson.

## COUNT III:
## RETALIATION (TITLE VII)

27. The unlawful employment practices include retaliating against Dawson in violation of Title VII, 42 U.S.C. §2000e-2.

  a.  Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through Paragraph 26 herein as if fully repeated verbatim.

  b.  Plaintiff engaged in protected activity by:

    i.  declining manager Rodrigo's sexual advances in exchange for

5

    two months in Marsielle, France,

    ii. refusing to move Plaintiff's hotel closer to Castellane which was easier access for manager Rodrigo.

    iii. refusing to become intoxicated on numerous occasions and declining manager Rodrigo's solicitations of Plaintiff for sex.

28. Chua retaliated against Plaintiff for engaging his protected activity by displaying anger, bullying and unprofessional conduct, both in person and during virtual workplace interactions toward Plaintiff.

29. The retaliatory conduct of Chua was related to Plaintiff's protected activity.

30. The retaliatory conduct of Chua occurred within close proximity to Plaintiff's protected activity.

31. The effect of the practices complained of in Paragraphs 10 through 23 and the retaliatory conduct of Chua has been to deprive Dawson of equal employment opportunities and to otherwise adversely affect his employment because of his sex, male.

32. The unlawful employment practices complained of in Paragraphs 10 through 23 and the retaliatory conduct of Chua were intentional.

33. The unlawful employment practices complained of in Paragraphs 10 through 23 and the retaliatory conduct of Chua were done with malice or with reckless indifference to the federally protected rights of Dawson.

**COUNT IV:**

**CONSTRUCTIVE DISCHARGE IN VIOLATION OF
TENNESSEE PUBLIC POLICY**

34. Plaintiff realleges and incorporates by reference Paragraphs 1 through 33 as if fully set forth at length herein.

35. Plaintiff was an at-will employee of the defendant employer;

36. Defendant employer permitted a hostile working environment sufficient to render

Plaintiff's working conditions so intolerable that resignation was Plaintiff's only reasonable alternative to wit:

    a.    Manager Rodrigo made sexual advances to Plaintiff in exchange for two months in Marsielle, France,

    b.    Manager Rodrigo pushed Plaintiff to move his hotel closer to Castellane which was easier access for Rodrigo.

    c.    Manager Rodrigo attempted to get Plaintiff to become intoxicated on numerous occasions and solicited Plaintiff for sex.

    d.    Plaintiff was retaliated against by Chua in the form of anger, bullying and unprofessional conduct, both in person and during virtual workplace interactions toward Plaintiff.

37. Thus, Plaintiff had no reasonable alternative but to be constructively discharged.

38. Plaintiff's constructive discharge directly resulted from conduct by agents and employees of Defendant Employer including Sr. Vice President Chua, Vice President Meek, and manager Rodrigo, for reasons offensive to the public policy of this State.

39. Said constructive discharge clearly violates public policy and support a constructive discharge claim in violation of public policy pursuant to *Walker v. City of Cookeville,* No. M200201441COAR3CV, 2003 WL 21918625, at *7 (Tenn. Ct. App. Aug. 12, 2003).

40. The actions of Defendants' agents and employees including Sr. Vice President Chua, Vice President Meek, and manager Rodrigo, were taken within the scope of their employment with Defendant. Defendant employer is therefore sued for its conduct in respondeat superior.

41. As a direct and proximate result of the Defendant employer's aforementioned actions, the Plaintiff has been deprived of his employment rights by adverse job action, loss of income in the form of wages and employment benefits due to him as an employee and other monetary damages. He has been deeply embarrassed and humiliated, has suffered extreme anxiety and

7

emotional distress, as well as financial distress from being unjustly forced out of work. The Plaintiff is entitled to recover compensatory and punitive damages for such violations of his employment rights.

## COUNT V:

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

42. Plaintiff incorporates by reference and re-alleges the allegations in paragraphs 1-41 as though fully set forth herein.

43. Sr. Vice President Chua, Vice President Meek, manager Rodrigo and other employees and agents of Defendant employer owed a duty to not harass and retaliate against Plaintiff and to not deprive Plaintiff of his employment rights under state and federal law.

44. Manager Rodrigo repeatedly engaging in harassing behavior toward Plaintiff, because of his sex, male, quid pro quo, offering employment benefits in exchange for sexual favors, and repeatedly soliciting Plaintiff for sex, and Sr. Vice President Chua's retaliation for Plaintiff's declining the same, as well as the conduct of Vice President Meek, breached said duty to Plaintiff.

45. As a direct and proximate result of the practices complained of in Paragraphs 10 through 23 and the breach of duty by Sr. Vice President Chua, Vice President Meek, and manager Rodrigo, Plaintiff was deprived of equal employment opportunities and to otherwise adversely affect him employment because of his sex, male.

46. The effect of the practices complained of in Paragraphs 10 through 23 and the breach of duty by Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other employees and agents of Defendant Employer, has been to deprive Dawson of equal employment opportunities and to otherwise adversely affect him employment because of his sex, male.

47. The unlawful employment practices complained of in Paragraphs 10 through 23 and the breach of duty by Sr. Vice President Chua, Vice President Meek, and manager Rodrigo were intentional.

48. The unlawful employment practices complained of in Paragraphs 10 through 23 and the breach of duty by Sr. Vice President Chua, Vice President Meek, and manager Rodrigo were done with malice or with reckless indifference to the federally and state protected rights of Dawson.

49. The actions of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other employees and agents of Defendant Employer were taken within the scope of their employment with Defendants. Defendants are therefore sued for their conduct in respondeat superior.

50. The unlawful employment practices complained of in Paragraphs 10 through 23 and the breach of duty by Sr. Vice President Chua, Vice President Meek, and manager Rodrigo caused Plaintiff to be deeply embarrassed and humiliated, has suffered extreme anxiety and emotional distress, as well as financial distress from being unjustly forced out of work. The Plaintiff is entitled to recover compensatory and punitive damages for such violations of his employment rights.

51. By the negligent actions of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo, and other employees and managers of Defendant employer described above, Defendants, through their agents and employees, knew or should have known that the retaliatory conduct toward plaintiff would offend, demean, intimidate, and injure him. As Plaintiff's employer, Defendant employer had a duty to prevent and remedy the mistreatment suffered by Plaintiff. As described above, Defendant employer breached this duty causing Plaintiff emotional harm.

52. Upon information and belief, the actions of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo, discharging their authorized duties within the normal course and scope of their employment with the Defendant employer and in furtherance of the Defendant employer's interests, and their wrongful discharge of these duties is the conduct complained of herein. Therefore, Defendant employer is liable for punitive damages for their malicious and/or willful and wanton conduct in an amount to be established at trial which would punish the Defendant for its conduct and which would deter others from engaging in such conduct in the

future pursuant to Tenn. Const. art. I, § 6.

53. Emotional distress is a reasonably foreseeable result of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other employees of Defendants employer's harassment of and retaliation against Plaintiff because of his sex, male, in the workplace and its creation of intolerable working conditions for plaintiff. Defendants' conduct is intolerable and outrageous to society's expectations of employers and managers.

54. As a direct result of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other employees of Defendant employer's actions, Plaintiff suffered emotional distress that caused great anxiety and harmed his family life and career.

## COUNT VI:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

55. Plaintiff incorporates by reference and re-alleges the allegations in paragraphs 1-54 as though fully set forth herein.

56. Manager Rodrigo's conduct repeatedly engaging in harassing behavior toward Plaintiff, because of his sex, male, including offering Plaintiff benefits in quid pro quo for in exchange for sexual favors, and repeatedly soliciting Plaintiff for sexual conduct, and Sr. Vice President Chua, Vice President Meek, and manager Rodrigo's retaliation for Plaintiff's denial of the same, was intentional or reckless in nature.

57. Manager Rodrigo's conduct repeatedly engaging in harassing behavior toward Plaintiff, because of his sex, male, including offering Plaintiff benefits in quid pro quo for in exchange for sexual favors, and repeatedly soliciting Plaintiff for sexual conduct, and Sr. Vice President Chua, Vice President Meek, and manager Rodrigo's retaliation for Plaintiff's denial of the same was so outrageous that it is not tolerated by civilized society.

58. The unlawful employment practices complained of in Paragraphs 10 through 23 and the breach of duty by Sr. Vice President Chua, Vice President Meek, and manager Rodrigo caused Plaintiff to be deeply embarrassed and humiliated, has suffered extreme anxiety and emotional

10

distress, as well as financial distress from being unjustly forced out of work. The Plaintiff is entitled to recover compensatory and punitive damages for such violations of his employment rights.

59. The actions of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other of Defendant employer's agents and employees were taken within the scope of their employment with Defendant. Defendant employer is therefore sued for its conduct in respondeat superior.

60. Defendant employer through the conduct of manager Rodrigo's repeatedly engaging in harassing behavior toward Plaintiff, because of his sex, male, including offering Plaintiff benefits in quid pro quo for in exchange for sexual favors, and repeatedly soliciting Plaintiff for sexual conduct, and Sr. Vice President Chua, Vice President Meek, and manager Rodrigo's retaliation for Plaintiff's denial of the same, and its managers, engaged in extreme and outrageous conduct. This conduct, when taken as a whole, exceeded all bounds usually accepted by decent society, and included, by way of example and not limitation:

    a.    condoning Rodrigo's severely harassing behavior;

    b.    refusing to remedy the discrimination against Plaintiff despite his repeated resistance to such harassment;

    c.    retaliation by Chua for resisting manager's Rodrigo's harassment

61. Sr. Vice President Chua, Vice President Meek, and manager Rodrigo's conduct was either intended to cause or was recklessly indifferent to the likelihood that it would cause severe mental and emotional distress to Plaintiff.

62. Upon information and belief, the actions of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo, discharging their authorized duties within the normal course and scope of their employment with the Defendant employer and in furtherance of the Defendant employer's interests, and their wrongful discharge of these duties is the conduct complained of herein. Therefore, Defendant employer is liable for punitive damages for their malicious and/or

willful and wanton conduct in an amount to be established at trial which would punish the Defendant for its conduct and which would deter others from engaging in such conduct in the future pursuant to Tenn. Const. art. I, § 6.

63. Emotional distress is a reasonably foreseeable result of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other employees of Defendants employer's harassment of and retaliation against Plaintiff because of his sex, male, in the workplace and its creation of intolerable working conditions for plaintiff. Defendants' conduct is intolerable and outrageous to society's expectations of employers and managers.

64. As a direct result of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other employees of Defendant employer's actions, Plaintiff suffered emotional distress that caused great anxiety and harmed his family life and career.

65. General manager Rodrigo's conduct and that of Sr. Vice President Chua, Vice President Meek and that of other employees of Defendant employer's conduct in fact caused severe mental and emotional distress to Plaintiff, which included, by way of example and not limitation, fear, distress, anxiety, mental anguish, embarrassment, extreme stress, and extreme concern about his well-being.

66. As a direct result of said conduct, Plaintiff has suffered and will continue to suffer severe mental and emotional distress, medically diagnosed depression, emotional pain, suffering, inconvenience, embarrassment, mental anguish, anxiety and other non-pecuniary losses in an amount to be determined at trial pursuant to Tenn. Const. art. I, § 6.

## COUNT VII: NEGLIGENT RETENTION AND SUPERVISION

67. Plaintiff realleges and incorporates by reference paragraphs 1-66 as though fully set forth herein.

68. Defendant employer owed a duty to use ordinary care to protect plaintiff from harassing, oppressive, and retaliatory conduct and injury from manager Rodrigo's conduct

repeatedly engaging in harassing behavior toward Plaintiff, because of his sex, male, including offering Plaintiff benefits in quid pro quo for in exchange for sexual favors, and repeatedly soliciting Plaintiff for sexual conduct, and Sr. Vice President Chua, Vice President Meek, and manager Rodrigo's retaliation for Plaintiff's denial of the same and its managers and employees.

69. Defendant employer had knowledge of the actions of its managerial employees and agents, including the conduct of manager Rodrigo, Sr. Vice President Chua, Vice President Meek, and other agents, and managers toward plaintiff. Defendant employer knew or should have known that such work conditions existed for Plaintiff, and of manager Rodrigo's, Sr. Vice President Chua, Vice President Meek's unfitness for their jobs.

70. Defendant employer was negligent in failing to take adequate measures to supervise Plaintiff's superiors, including manager Rodrigo, Sr. Vice President Chua, Vice President Meek and others to stop their unlawful mistreatment of Plaintiff. To the contrary, Defendant employer shielded Plaintiff's superiors, including manager Rodrigo, Sr. Vice President Chua, and Vice President Meek and its other agents, thus enabling further discriminatory, harassing and retaliatory behavior toward Plaintiff.

71. Defendant employer's negligent supervision and retention of Plaintiff's superiors, including manager Rodrigo, Sr. Vice President Chua, Vice President Meek and its other employees fostered and validated an already oppressive work environment for Plaintiff, and was a direct and proximate cause of the injuries and harm to Plaintiff.

72. As a direct result of the negligence of Defendant employer in retaining and supervising Plaintiff's superiors, including manager Rodrigo, Sr. Vice President Chua, and Vice President Meek, and condoning their conduct, Defendant employer acted wantonly, willfully, and in disregard of the protected rights of Plaintiff, thus entitling his to an award of compensatory and punitive damages in an amount to be determined at trial pursuant to Tenn. Const. art. I, § 6.

**COUNT VIII:**
**VIOLATION OF TENNESSEE HUMAN RIGHTS ACT (THRA)**

73. Plaintiff realleges and incorporates by reference paragraphs 1-72 as though fully set forth herein.

74. Plaintiff is a member of a protected class, male.

75. Plaintiff was otherwise qualified for his position and was meeting the legitimate expectations of Defendant employer.

76. Plaintiff was subjected to manager Rodrigo's conduct repeatedly engaging in harassing behavior toward Plaintiff, based on his sex, male, including offering Plaintiff benefits in quid pro quo for in exchange for sexual favors, and repeatedly soliciting Plaintiff for sexual conduct.

77. Sr. Vice President Chua, Vice President Meek, and manager Rodrigo retaliated against Plaintiff for his denial of the conduct of manager Rodrigo, by, including but not limited to displaying anger, bullying and unprofessional conduct, both in person and during virtual workplace interactions toward Plaintiff.

78. The working conditions, as a result of the sexual harassment because of his sex, male, from manager Rodrigo, and retaliation from Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and other agents, and managers of Defendant employer became so intolerable and caused Dawson severe emotional distress, constructively discharging Dawson.

79. Manager Rodrigo's harassment of Plaintiff, because of his sex, male, and retaliation from Sr. Vice President Chua, Vice President Meek, and manager Rodrigo, resulting in Plaintiff's constructive discharge give rise to an inference of unlawful discrimination against Plaintiff, based on his sex, male.

80. The unlawful employment practices complained of in Paragraphs 10 through 23 and the conduct of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo caused Plaintiff to be deeply embarrassed and humiliated, and he has suffered extreme anxiety and emotional distress, as well as financial distress from being unjustly forced out of work. The

Plaintiff is entitled to recover compensatory and punitive damages for such violations of his employment rights.

81. The actions of Sr. Vice President Chua, Vice President Meek, and manager Rodrigo and Defendant employer's other agents and employees were taken within the scope of their employment with Defendant employer. Defendant employer is therefore sued for its conduct in respondeat superior.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in harassment and any other employment practice which discriminates based on sex, female.

B.    Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for males and which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant Employer to make whole Dawson by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

D.    Order Defendant Employer to make whole Dawson by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

E.    Order Defendant Employer to pay Dawson punitive damages for its malicious and reckless conduct described above in amounts to be determined at trial pursuant to Tenn. Const. art. I, § 6.

F. Order Defendant Employer to submit to continued monitoring by this Court to ensure compliance with this Court's Order.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award Plaintiff his costs of this action.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by his Complaint.

This the 10th day of August, 2025.

Respectfully submitted,

/s/Brian K. Leonard
Brian K. Leonard, Esq.
TBPR No. 025522
**B.K. LEONARD LAW FIRM**
11010 Lake Grove Blvd., Unit 100-425
Morrisville, North Carolina 27560
Telephone: 984.212.7737
Facsimile: 919.578.8757
brn_leonard@yahoo.com
bleonard@civilrightsappellatelawyer.com