**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RICHARD DAWSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 3:25-cv-00901** |
| | ) | |
| **v.** | ) | **CHIEF JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE FRENSLEY** |
| **CMA CGM (AMERICA), LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant CMA CGM (America) LLC's ("CCA") Motion to Dismiss (Doc. No. 14), Plaintiff Richard Dawson's ("Dawson") Response in Opposition (Doc. No. 20), and CCA's Reply (Doc. No. 24). For the reasons stated herein, the Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[1]

Dawson was employed by CCA as a customer service representative and project manager. (Compl., Doc. No. 1 at ¶¶ 10-11). He alleges that, on March 21, 2024, CCA Sr. Vice President of Client Solutions Shao Chua and CAA Vice President of Client Experience Amanda Meek "compelled [him] to cancel existing plans with coworkers to connect with Rodrigo, a manager from the home office in Marseille, France." (*Id*. at ¶ 12). Beginning on that date, Rodrigo tried to get Dawson intoxicated and propositioned him for sex on numerous occasions, made sexual comments toward him, offered to send him to Marseille, France, for two months in exchange for sex, and "pushed hard" to move Dawson's hotel to a different location which would give Rodrigo

---

[1] The facts in this section are drawn from the Complaint. (Doc. No. 1). The specific wording and punctuation used in the Complaint present some challenges. When an allegation has more than one possible meaning, the Court has chosen the meaning that is most favorable to the Plaintiff, drawing all reasonable inferences in his favor.

"easier access" to Dawson. (Doc. No. 1 at ¶¶ 13-15, 22(b), 23(e)). Dawson rejected Rodrigo's advances. (*Id*. at ¶ 16). Dawson alleges that after he rejected Rodrigo's repeated advances, Chua subjected him to "anger, bullying, and unprofessional conduct." (*Id*. at ¶ 17). Dawson claims that Chua and Meeks compelling him to cancel plans and meet with Rodrigo, sexual harassment by Rodrigo, and Chua's anger, bullying, and unprofessional conduct created a hostile work environment resulting in his constructive discharge in September 2024. (*Id*. at ¶¶ 19, 23, 36).

On August 11, 2025, Dawson filed this action, asserting claims against CCA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII") for sexual harassment (quid pro quo and hostile work environment), constructive discharge, and retaliation (Counts I, II, III). (Doc. No. 1). Dawson also brings state-law claims for constructive discharge (Count IV), negligent infliction of emotional distress (Count V), intentional infliction of emotional distress (Count VI), negligent retention and supervision (Count VII), and violation of the Tennessee Human Rights Act ("THRA"). (*Id.*).

CCA moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 14).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must accept as true all of the factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the

complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

## III. ANALYSIS

### A. Statute of Limitations

CCA contends that Dawson's tort claims (Counts IV, V, VI, and VII) and THRA claim (Count VIII) are time-barred. (Doc. No. 15). The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). A plaintiff typically does not have to anticipate or negate an affirmative defense, such as the statute of limitations, to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Thus, a Rule 12(b)(6) motion is "generally an inappropriate vehicle for dismissing a claim based on the statute of limitations." *Id.* However, dismissal on timeliness grounds is appropriate "if the allegations in the complaint affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (internal quotations omitted). "[I]t is the defendant's burden to show that the statute of limitations has run." *Id.*

In Tennessee, common law tort claims and claims under the THRA have a one-year statute of limitations. Tenn. Code Ann. §§ 28-3-104 and 4-21-311(d). CCA argues that because the Complaint only alleges sexual harassment in March and April of 2024, and those dates are over a year before the filing of this action, the tort and THRA claims are time-barred. (Doc. No. 15). Defendant ignores that Dawson's allegation that the sexually harassing conduct took place on "numerous occasions" and that the alleged hostile work environment, which was based on

allegations of sexual harassment, retaliation, and bullying, was "on-going" until September 2024. (Doc. No. 1 at ¶¶ 15, 19). The Complaint was filed less than one year later in August 2025. Therefore, the allegations in the complaint do not affirmatively show that the statute of limitations has run and the motion to dismiss on this basis is denied.

### B. Title VII and THRA

Dawson brings claims for sexual harassment and retaliation under Title VII and THRA, which follow the same analysis. *See Howington v. Quality Rest. Concepts, LLC,* 298 F. App'x. 436, 437 n. 1 (6th Cir. 2008) ("Because the Tennessee legislature intended the THRA 'to be coextensive with federal law,' claims under the [statute] follow the same analysis as those under Title VII."). Accordingly, they are considered together.

In reviewing the sufficiency of the allegations in the Complaint, the Court must bear in mind that although a plaintiff must ultimately prove all elements to prevail on that claim, he is not required to establish a prima facie claim to survive a motion to dismiss. *See Bruce v. Adams and Reese, LLP*, 168 F.4th 367, 376 (6th Cir. 2025). As the Sixth Circuit recently explained with regard to a claim for hostile work environment:

> After [the plaintiff] has had the opportunity to conduct discovery … she must identify facts in the record supporting each of the five elements. We do not, however, apply the *McDonnell Douglas* burden-shifting standard when, as here, we consider allegations of harassment at the pleading stage. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("[T]he prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement." (citing *Swierkiewicz v. Sorema, 534 U.S. 506, 510 (2002))).* For our purposes the question is simply whether [the plaintiff's] complaint "allege[s] sufficient factual content from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that [the plaintiff] was subjected to a hostile work environment.

*Id.* at 376-77. With that standard in mind, the Court proceeds to consider each claim.

1. <u>Sexual Harassment</u>

There are two types of sexual harassment under Title VII and THRA – quid pro quo sexual harassment and hostile work environment. *See Moling v. O'Reilly Automotive, Inc.*, 763 F. Supp. 2d 956, 965 (W.D. Tenn. 2011) (citing *Howington v. Quality Rest. Concepts, LLC,* 298 F. App'x 436, 440 (6th Cir. 2008)). Dawson asserts both types. (Doc. No. 1 at ¶ 22). Defendants challenge only the sufficiency of the pleadings with regard to hostile work environment.

The Sixth Circuit recently reiterated what constitutes a hostile work environment:

> A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). "[T]he conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph*, 453 F.3d at 733. Although courts have sometimes used the language "severe '*and*' pervasive," our caselaw is clear that "'severe *or* pervasive' is properly considered in the disjunctive." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (emphasis added); *see also Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 n.2 (6th Cir. 2012). A plaintiff need not, therefore, necessarily demonstrate the existence of severe conduct if she demonstrates that the sexually charged conduct at issue is sufficiently pervasive. In determining whether sexualized commentary pervades a plaintiff's workplace, we consider, *inter alia*, its "frequency," "whether it is ... humiliating," and "whether it unreasonably interferes with an employee's performance." *Harris*, 510 U.S. at 23. Even at summary judgment, a plaintiff may meet her burden of showing that such conduct was pervasive by asserting that it was "'ongoing,' 'commonplace,' and 'continuing,'"—she need not, that is, "recount" each and every "specific instance[ ]" of such comments. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). "To allege a hostile work environment, a plaintiff must demonstrate that the conduct at issue was 'severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive.'" *Hamlet v. Shelby County Government*, 2025 WL 2690568, at *6 (quoting *Powell v. Flash Staffing*, No. 2:22-cv-02269-TLP-cgc, 2024 WL 1116929, at *3 (W.D. Tenn. Mar. 14, 2024)).

*Bruce*, 168 F.4th at 377 (internal citations modified).

CCA argues that Dawson fails to allege sufficiently severe or pervasive conduct necessary to plausibly allege that the harassment created a hostile work environment. (Doc. No. 15 at 11-14). CCA argues that Dawson's allegations of "sexual comments purportedly made by Rodrigo on March 21, 2024, as well as during a business trip by Plaintiff for a few weeks in the spring of 2024 in Marseille, France" do not meet the required "high bar" necessary for an actionable claim. (Doc. No. 15 at 13). But CAA ignores that Dawson alleges the "sexual comments" – *i.e.*, Rodrigo "offering employment benefits in exchange for sexual favors and repeatedly soliciting [Dawson] for sex" – took place "on numerous occasions" over a period of months. (*See e.g.,* Doc. No. 1 at ¶¶ 13-19, 23(b), 27(b), 36(c), 44). Although they do not have the same level of detail, Dawson's allegations are comparable to those in *Bruce*, where allegations of a "consistent pattern of sexualized jokes and comments" were deemed sufficient to state a claim for hostile work environment. *See Bruce*, 168 F.4th at 378.

Viewed in the light most favorable to Dawson, and drawing all inference in his favor, the facts alleged state a plausible hostile work environment claim. Accordingly, CCA's motion to dismiss this claim will be denied.

2. <u>Constructive Discharge</u>

Dawson brings three claims based on "constructive discharge." In Counts II and VIII, he asserts constructive discharge in violation of Title VII and THRA; and in Count IV, he asserts constructive discharge in violation of Tennessee public policy. This section addresses constructive discharge with regard to Counts II and VIII. The common law constructive discharge claim asserted in Count IV is addressed *infra,* Section III., C., 2.

A constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

*Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1107 (6th Cir. 2008) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). To demonstrate a constructive discharge, the plaintiff must show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit. *Laster v. City of Kalamazoo*, 746 F. 3d 714, 728 (6th Cir. 2014). When an employee alleges that he resigned because of discriminatory harassment, as Dawson does here, the employee must demonstrate "a discriminatory work environment even more egregious that the high standard for hostile work environment." *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (quoting *E.E.O.C. v. Univ. of Chicago Hospitals*, 276 F.3d 326, 331-32 (7th Cir. 2002)).

CCA argues that Dawson failed to allege sufficient facts that the working conditions were such that a reasonable person would have felt compelled to resign under the circumstances. (Doc. No. 15 at 14-16). CAA characterization of the allegations is that Dawson resigned five months after the harassment by Rodrigo, failed to take advantage of available internal procedures to report Rodrigo's conduct to CAA, and made "vague and conclusory allegations" of "bullying and unprofessional conduct" by Chua.

This characterization draws inferences in favor of CAA, which is not the standard on a motion to dismiss. Construed in the light most favorable to Dawson and drawing all inferences in his favor, as the Court is required to do at this stage, the Complaint alleges that Rodrigo repeatedly tried to get Dawson intoxicated, propositioned him for sex, and engaged in other harassment based on sex. (Doc. No. 1 at ¶ 23). The Complaint alleges this harassment and Chua's subsequent conduct caused Dawson severe emotional distress and resulted in constructive discharge.

Construed in the light most favorable to Dawson, the allegations in the Complaint are sufficient to plausibly allege constructive discharge. Accordingly, CCA's motion to dismiss Counts II and IV will be denied.

3. Retaliation

To prove a claim for retaliation under Title VII or THRA, the plaintiff must show that (1) he engaged in protected activity; (2) the employer knew of the protected activity; and (3) the employer took an adverse employment action against him because of his protected activity. *Huang v. Ohio State Univ*., 116 F.4th 541, 561 (6th Cir. 2024) (citing *Wyatt v. Nissan N. Am., Inc*., 999 F.3d 400, 419 (6th Cir. 2021)); *Howington,* 298 F. App'x. at 437 n. 1 (6th Cir. 2008). An adverse employment action includes any conduct "that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Wyatt*, 999 F.3d at 419.

As stated above, at the motion to dismiss stage, a plaintiff is not required to establish a prima facie claim. *See supra*, III., B. (citing *Bruce*, 168 F.4th at 376. Instead, Dawson must "allege[s] sufficient factual content from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that CAA took an adverse employment action against him in retaliation for Dawson engaging in protected conduct. *Id*.

CAA argues Dawson fails to allege sufficient facts in his Complaint that he engaged in protected activity (because he did not complain about Rodrigo or Chua to anyone else in CAA), that he suffered an adverse employment action (because his allegations are insufficient to plausibly allege constructive discharge), or that there is a causal connection between his sexual harassment allegations against Rodrigo, Chua's "bullying" and "unprofessional" conduct, and his subsequent resignation (because of the temporal gap between Rodrigo's first instance of harassment and

Dawson's resignation and his failure to report Rodrigo or Chua's conduct to anyone at CAA). (Doc. No. 15 at 16-17).

CAA's first two arguments are easily rejected. With regard to protected activity, the Sixth Circuit has held that refusing a supervisor's sexual advances is protected conduct. *Huang v. Ohio State Univ.*, 116 F.4th 541, 562 (6th Cir. 2024) (citing *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067-68 (6th Cir. 2015)). Although, the Complaint does not specifically allege that Rodrigo is Dawson's supervisor, it alleges that Rodrigo is a "manager." At this stage, the Court finds the Complaint plausibly alleges that Dawson engaged in protected activity.

Next, CAA argues that Dawson's failure to plausible allege constructive discharge also means that he has failed to plausibly allege an adverse employment action. This argument fails in light of the Court's determination with regard to constructive discharge. *See supra*, Section III., B., 2. Even without a constructive discharge, "bullying and unprofessional conduct" could, depending on the severity, dissuade a reasonable worker from making or supporting a charge of discrimination. Accordingly, the Court finds the Complaint plausibly alleges an adverse action.

CAA's final argument with regard to the retaliation claim is that there are insufficient facts from which to plausibly infer that Chua or anyone else engaged in conduct because of Dawson's protected activity. CAA contends that the allegations in the Complaint suggest that Dawson did not complain to anyone about Rodrigo's conduct and that nothing in the factual allegations suggests Chua or anyone else knew Dawson engaged in protected activity. CAA also argues the allegations do not plausibly allege causation because five months passed between the last specified instance of harassment by Rodrigo in April 2024 and Dawson's forced resignation in September 2024.

CAA's argument that temporal proximity cannot establish causation here is based on an assumption that the harassment by Rodrigo ended in April 2024. CAA points to a number of cases finding that temporal proximity of four to five months is insufficient to establish causation. (*See* Doc. No 15 at 18). But many of these cases were decided on summary judgment and are of little value at the pleading stage. Moreover, as discussed with regard to other claims, CAA's argument ignores Dawson's allegation that Rodrigo harassed him "repeatedly" and "on numerous occasions," beginning in March 2024, but without a specified end date. (Doc. No. 1 at ¶¶ 15, 44). Given that Chua and Meek initially compelled Dawson to meet with Rodrigo, and that Chua's "anger, bullying, and unprofessional conduct" began after Dawson rejected Rodrigo's sexual advances, it is reasonable to infer that Chua knew that Dawson rejected Rodrigo. While the Complaint does not clearly allege when Dawson last rejected Rodrigo or when Chua's conduct began, considering that the entire window of time is approximately six months, temporal proximity between the rejection of Rodrigo and Chua's is sufficient to plausibly infer causation.

In summary, construing the allegations in the light most favorable to Dawson and drawing all reasonable inferences in his favor, Dawson has stated a plausible claim for retaliation. Accordingly, CAA's motion to dismiss the retaliation claims will be denied.

**C. State Law Claims**

1. <u>Negligence Claims</u>

CCA argues that Dawson's claims for negligent infliction of emotional distress and negligent retention and supervision are barred by the exclusive remedy provision of the Tennessee Workers' Compensation Act ("TWCA"). (Doc. No. 15).

The TWCA is the exclusive remedy for claims by employees against their employer when the injury "arise[s] out of the work and occur[s] in the course of employment." *Doe v. Matthew*

*25, Inc*., 322 F. Supp. 3d 843, 852 (M.D. Tenn. 2018) (quoting *Padilla v. Twin City Fire Ins. Co*., 324 S.W.3d 507, 511 (Tenn. 2010)). However, "[i]f an injury to an employee does not fall within the parameters of the [workers compensation] law, then the exclusive remedies provision does not apply." *Id*. at 851-52. "The Tennessee Supreme Court held, generally, that injuries based on sexual harassment are not covered by workers' compensation because those injuries 'd[o] not arise out of [the injured employee's] employment,' but rather 'result[] from conduct that [is] purely personal.'" *Powell v. Western Exp., Inc*., 795 F. Supp. 3d 1032, 1036 (M.D. Tenn. 2025) (citing *Anderson v. Save-A-Lot, Ltd*., 989 S.W.2d 277 (Tenn. 1999)). "This general rule reflects Tennessee public policy that 'sexual harassment [and associated claims] should not and cannot be recognized as a risk inherent in any work environment.'" *Id*. (citing *Vanover v. White*, 2008 WL 2713711, at *16 (E.D. Tenn. Jul. 10, 2008)).

The cases relied upon by CCA are distinguishable because they were either determined on summary judgment or involved claims other than sexual harassment. *See e.g*., *Horne v. loandepot.com, LLC*, No. 3:17-cv-01479, 2018 WL 1730389, at *1 (MD. Tenn. Apr. 10, 2018) (automobile accident); *Young v. United Parcel Service, Inc*., 992 F. Supp. 2d 817, 840 (M.D. Tenn. 2014) (granting summary judgment on negligence claims arising out of FMLA retaliation and racial discrimination as bared by exclusivity provision of the TWCA); *Bellomy v. Autozone, Inc*., No. E2009-00351-COA-R3-CV, 2009 WL 4059158, at *1 (Tenn. Ct. App. Nov. 24, 2009) (affirming summary judgment granted in favor of defendant for negligence claims arising out of non-sexual harassment sex discrimination)).

Because Dawson's claims are grounded in allegations of sexual harassment, the TWCA exclusivity bar does not apply. Accordingly, the motion to dismiss the claims for negligent infliction of emotional distress and negligent retention and supervision will be denied.

2. Common-law Constructive Discharge

CAA argues that Dawson's common-law constructive discharge claim (Count IV) is preempted by the THRA, which provides an exclusive remedy for employment discrimination, harassment, and retaliation. (Doc. No. 15 at 5 (citing *Pigott v. Battle Ground Academy*, 909 F. Supp. 2d 949, 966-67 (M.D. Tenn. 2012)). Dawson does not dispute that the THRA is the exclusive remedy for discrimination and retaliation claims in connection with employment. (*See* Doc. No. 20 at 3). He argues, however, that the THRA does not preempt his constructive discharge claim because it is not based solely on discrimination and retaliation. (*Id*. (citing *Austin v. Alexander*, 439 F. Supp. 3d 1019, 1025-26 (M.D. Tenn. 2020)). Dawson states that his claim is based on allegations of "bullying and unprofessional conduct" and that these allegations support a claim for constructive discharge separate and apart from sexual harassment and retaliation. (*Id*. (citing Doc. No. 1 at ¶ 17)). Contrary to Dawson's characterization, the Complaint clearly states that the basis for the common-law constructive discharge claim is Rodrigo's sexual advances and Chua's retaliation – i.e., sexual harassment and retaliation. (*See* Doc. No. 1 at ¶¶ 34-36).

Therefore, Count IV is preempted by the THRA and will be dismissed.

3. Intentional Infliction of Emotional Distress

In Tennessee, the elements of a claim for intentional infliction of emotional distress are: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018). The conduct must be "atrocious," "utterly intolerable," and "beyond all bounds of decency." *Goldfarb v. Baker*,

547 S.W.2d 567, 569 (Tenn. 1977). Generally, allegations that an employer violated anti-discrimination laws are insufficient to meet this high bar. *See Jenkins v. Nashville Public Radio*, No. 3:02-cv-0179, 2005 WL 3358871, at * 4 (M.D. Tenn. Dec. 9, 2005) ("Alleging a violation of anti-discrimination laws, without additional evidence showing conduct so outrageous as not to be tolerated in civilized society, is simply insufficient to prove intentional infliction of emotional distress."); *Arnett v. Domino's Pizza I, LLC*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003) (stating that "discriminatory conduct does not automatically give rise to the imposition of liability for intentional infliction of emotional distress. If it did, virtually every action brought under these statutes would include an intentional infliction of emotional distress claim"); *Barrett v. Whirlpool Corp.*, 704 F. Supp. 2d 746, 757-58 (M.D. Tenn. 2010); *Garner v. SDH Servs. East, LLC*, 55 F. Supp. 3d 1016, 1026 (M.D. Tenn. 2014) (motion to dismiss); *Stacy v. MVT Services, Inc*., No. 3:11-cv-01241, 2012 WL 2281495 (M.D. Tenn. Jun. 18, 2012) (motion to dismiss "Sexual harassment will only support an outrageous conduct claim when the harassment alleged is especially heinous compared to other sexual harassment claims.").

CCA asserts that the allegations in the Complaint do not rise to the level of outrageous conduct required for this claim and that there are no factual allegations to suggest that Dawson suffered a serious mental injury. (Doc. No. 15). In response, Dawson argues that Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to set forth "only enough facts to state a claim that is plausible on its face," and that he has done so here. (Doc. No. 20 at 5 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The Complaint alleges that the repeated sexual harassment by Rodrigo and actions by Chua and Meeks caused Dawson to suffer "severe mental and emotional distress," including anxiety and medically diagnosed depression. (Doc. No. 1 at ¶¶ 66-66).

While the Complaint does not provide extensive details of the alleged conduct, at this stage the allegations are sufficient to state a plausible claim for relief. Accordingly, the motion to dismiss the claim for intentional infliction of emotional distress will be denied.

## IV. CONCLUSION

For the reasons stated, CAA's Motion to Dismiss (Doc. No. 14) is **GRANTED** in part and **DENIED** in part as follows: the motion is **GRANTED** as to Count IV, common law constructive discharge, and **DENIED** as to all other claims.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE